UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-1101(DSD/JJG)

Paul E. Geilfuss,
Kevin D. Eckert, and
Steven J. Krieglmeier,

          Plaintiffs,

v.                                                    **ORDER**

The City of Saint Paul and the
Board of Water Commissioners of
the City of Saint Paul,

          Defendants.


    Chad A. Allen, Esq., 1920 Conver Avenue, South St. Paul,
    MN 55075 and Gregory W. Deckert, Esq. and Vest & Deckert,
    6160 Summit Drive, Suite 360, Brooklyn Center, MN 55430,
    counsel for plaintiffs.

    Louise T. Seeba, Assistant City Attorney, 15 West Kellogg
    Boulevard, Suite 750, St. Paul, MN 55102, counsel for
    defendants.


    This matter is before the court upon defendants' motion for

summary judgment.  Based upon a review of the file, record and

proceedings herein, and for the reasons stated, the court grants

defendants' motion.


## BACKGROUND

    Plaintiffs Paul E. Geilfuss, Kevin D. Eckert and Steven J.

Krieglmeier commenced this action against defendants City of St.

Paul (the "City") and the Board of Water Commissioners of the City

of St. Paul (the "Board") on March 17, 2006.  Plaintiffs allege

that the City and the Board discriminated and retaliated against them based on their age in violation of the Age Discrimination in Employment Act ("ADEA").  See 29 U.S.C. §§ 623(a), (d).  Each plaintiff alleges that defendants intentionally declined to promote them to a supervisory position based on their age.  In addition, Krieglmeier asserts a retaliation claim based on a decrease in the number of opportunities he had to serve as a temporary supervisor after he complained of age discrimination.[1]

Plaintiffs work in the distribution division of the Saint Paul Regional Water Services ("SPRWS"), a water utility organized under the City and governed by the Board.  Steve Schneider is the general manager of SPRWS and is authorized to fill all vacant positions therein.  Steve Gleason is the manager of the distribution division and assigns all work within that division.  The distribution division of the SPRWS contains a general department that includes a water service supervisor position, which oversees water service workers and water utility workers, and a meter operation supervisor position, which oversees meter readers and water meter repairers. (See Seeba Aff. Ex. A.)

The water service supervisor and meter operation supervisor positions are classified positions within SPRWS, and filling the

_____

[1]  Eckert originally alleged an additional discrimination claim based on the City's failure to assign him overtime as well as a retaliation claim based on decreased opportunity to serve as a temporary supervisor.  (See Compl. ¶¶ 21-22.)  However, Eckert has voluntarily withdrawn those claims.

positions is governed by the City's Civil Service Rules. (See Barto Aff. ¶ 2; Seeba Aff. Ex. EE.) Under the Civil Service Rules, an individual can obtain appointment to a position in a variety of ways, including as a transfer candidate — an employee with an equivalent title in another department — or as a promotional candidate — an employee with a lesser title. (Barto Aff. ¶ 2.) However, the City is expected to fill vacant positions whenever possible in the following order: (1) reduction-in-title applicants, (2) transfer applicants, (3) reinstatement-after-layoff applicants, (4) reinstatement-after-voluntary-reduction applicants and (5) promotional applicants. (Seeba Aff. Ex. EE ¶ 8.A.1.)

A transfer candidate can be appointed to a position without completing a qualifying questionnaire or interviewing. (Barto Aff. ¶ 5.) Promotional candidates who meet the minimum requirements for a position, however, must first take a civil service exam. Promotional candidates apply directly to the City's human resources department, which administers the civil service exams in a manner so that the individual scoring the examination does not know the applicant's identity, age or date of birth. (Id. ¶¶ 7-10.) Based on the civil service exam scores, the human resources department certifies a list of individuals whose score equals or exceeds 75, thereby qualifying them for an interview. The qualifying individuals are then ranked by exam score from highest to lowest. (Id. ¶ 12.) The Civil Service Rules govern how many qualifying

3

individuals the human resources department will certify to interview for a position — the top three scores for one position and the top four scores for two positions.  (<u>Id.</u> ¶¶ 13-14.)  The department filling a position receives only the names of the promotional candidates who the human resources department certifies for an interview.  (<u>Id.</u> ¶¶ 15-17.)

As of the commencement of this lawsuit, Geilfuss was fifty-one years old and worked for the City as a water meter repairer since 1987.  Eckert was fifty-one years old and worked under SPRWS since 1984.  In 1999, Eckert joined the meter operation division and also became a water meter repairer.  Kreiglmeier was forty-nine years old and worked for the City since 1988.  Kreiglmeier worked in a variety of positions and began working within the water services department as a water utility worker in 1992.

In February 2005, SPRWS requested reduction-in-title and transfer applications for a meter operation supervisor position. Jerry Ludden and Mike Knutson applied as transfer candidates.  (<u>See</u> Geilfuss Dep. Ex. 2.)  At that time, Ludden was water utility main supervisor and previously had been the water service supervisor. The City's human resources department independently reviewed the applications and determined that Ludden was the only candidate who qualified for the position as a transfer candidate.  The human resources department informed Gleason that only one candidate was qualified to transfer into the position.  Gleason and Schneider

4

then decided to open the position up to promotional candidates. (Gleason Dep. at 45-48.)

On March 23, 2005, the City posted an announcement to solicit applications from promotional candidates for the position. According to the posting, the minimum position requirements included two years of experience in either meter operations or as a water department technician in a design or inspection capacity. Geilfuss and Eckert, as well as Mike Knutson and Tom Crancer, applied for the meter operation supervisor position as promotional candidates.   Knutson was a junior foreman with supervisory experience from a different department, and Crancer was a water meter repairer.   Although Knutson did not have the minimum two years of experience specified in the job description, Gleason believed that Knutson's prior supervisory experience qualified him to be a meter operation supervisor.  (See Gleason Dep. at 99.)  At that time, Crancer was fifty-two years old and Ludden and Knutson were thirty-nine years old.

The human resources department determined that all four promotional candidates met the position's minimum requirements and therefore administered a civil service exam to each candidate.  The exam consisted of five open-ended questions that sought general descriptions of the candidates' qualifications for the position. (See Geilfuss Aff. Ex. 1.)  The human resources department scored the exams anonymously and did not know the identity or age of the

applicants at the time the exams were scored.  (See Barto Aff. ¶¶ 7-9, 24-26.)  Based on the examination scores, the human resources department ranked the promotional candidates as follows: Knutson was first, Geilfuss was second, Crancer was third and Eckert was fourth.  The City did not provide explanations as to how the human resources department scored the exams.

Based on the promotional eligibility list and in accordance with the Civil Service Rules, the human resources department certified the top three scorers for interviews: Knutson, Geilfuss and Crancer.  A panel comprised of Gleason; Brad Eilts, the SPRWS distribution division assistant manager; and Dave Wagner, the SPRWS business division manager, interviewed the three promotional candidates as well as Ludden, the transfer candidate.  Following the interviews, the panel recommended to Schneider that he hire Ludden as the best candidate for the position.  The panel recommended Knutson as the next best candidate.  According to Gleason, in reaching its recommendation the panel primarily considered Ludden's prior supervisory experience. (Gleason Dep. at 55-58.)

Schneider accepted the panel's recommendation and offered the position to Ludden.  According to Geilfuss, Ludden was uncertain whether to accept the position and told Gleason that he believed the position should be offered to someone with more experience in meter operations than he had.  (Geilfuss Dep. at 56-58.)  However,

Gleason informed Ludden that if he did not take the position it would be offered to Knutson, who had no meter experience.  Ludden then accepted the position.  According to Geilfuss, prior to Ludden accepting the position, Crancer asked Gleason if Crancer would be offered the position if Ludden declined.  Geilfuss asserts that Gleason responded by asking Crancer how many years he had left before he retired.  (Geilfuss Aff. ¶ 5.)

On March 22, 2005, SPRWS requested promotional applications for two water service supervisor positions.  Kreiglmeier and Eckert applied for the position along with other promotional candidates.[2]  Kreiglmeier received the eighth highest score on the qualifying questionnaire administered by the human resources department and Eckert received the fifteenth highest score out of approximately twenty applicants.  (See Krieglmeier Dep. at 48; Eckert Dep. at 49.)  The human resources department, pursuant to the Civil Service Rules, certified the top four scores to interview for the two positions: Peter Davis, George Moy, Brian Gomez and John Schuweiler.  The two individuals who scored the highest on their qualifying applications, Davis and Moy, ultimately accepted the positions.  At that time, Davis was 44 years old, Moy was 35 years old, Gomez was 37 years old and Schuweiler was 44 years old. Krieglmeier was 49 years old.

---

[2]    Eckert, however, does not assert a claim of age discrimination based on his inability to procure the water service supervisor position.

On May 25, 2005, Eckert spoke with Gleason to ask why he was not being called for overtime work, and Gleason responded that "ditch digging was for young people." (Eckert Dep. at 35-36.)

In August 2005, a third water service supervisor position became open. In accordance with the Civil Service Rules, three individuals were certified to interview for the position. Because Davis and Moy already received appointments, the human resources department certified the three individuals with the next highest scores to interview: Gomez, Schuweiler and Stanley Denkinger, who was 46 years old. SPRWS appointed Gomez to the position.

In early 2005, Kreiglmeier discussed his concern with Gleason that no individual in their late forties or older had been promoted to a supervisor position. Kreiglmeier further complained to Gleason and Brad Eilts that he was not being given sufficient opportunities to serve as a temporary supervisor.[3] (Kreiglmeier Dep. at 68-70.) According to Kreiglmeier, when he asked Gleason why unqualified younger employees were being given opportunities to supervise, Gleason responded that: "we like to throw the younger employees a bone once in awhile." (Krieglmeier Dep. at 70.)

On October 17, 2005, Kreiglmeier filed a claim of age discrimination with the United States Equal Employment Opportunity

---

[3] When a water service supervisor is absent, Gleason or Eilts will assign the most senior worker on the crew or a heavy equipment worker to serve as a temporary supervisor. (Gleason Dep. at 103.)

Commission ("EEOC") based on SPRWS's decision not to promote him to water service supervisor. (See Kreiglmeier Dep. Ex. 5.) According to Krieglmeier, after he filed his EEOC claim and complained to Gleason about age discrimination the number of opportunities that Gleason gave him to act as a temporary supervisor declined. Since filing the EEOC claim, Krieglmeier has filled in as a supervisor once in November 2005 and several times in 2006, but nonetheless alleges that the majority of opportunities have gone to younger co-workers. (Id. at 57-59.) Krieglmeier worked as a temporary supervisor for a total of 876 hours from 1994 to 2003 but did not work any hours as a temporary supervisor in 2004 because he worked night shifts. (Id. at 57, 66.) On February 8, 2006, the EEOC issued Krieglmeier a notice of right to sue letter on his claim that the SPRWS discriminated against him based on his age when it denied him the promotion to water service supervisor or water utility mains supervisor. (Seeba Aff. Ex. G.)

Geilfuss, Eckert and Krieglmeier commenced this action against defendants alleging that the City and the Board discriminated against them based on age by failing to promote them and retaliated against Krieglmeier for complaining about age discrimination.

**DISCUSSION**

I.   **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   A fact is material when its resolution affects the outcome of the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.   Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in the light most favorable to the nonmoving party. Id. at 255.   The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.   See Celotex, 477 U.S. at 324.   If a plaintiff cannot support each essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.   Id. at 322-23.

## II.  Age Discrimination under the ADEA

Under the ADEA, it is unlawful for an employer to discriminate in any way against an individual with respect to his or her "compensation, terms, conditions, or privileges of employment" based on age.  29 U.S.C. § 623(a).  It is further unlawful for an employer to discriminate or retaliate against an employee based on the employee's opposition to an unlawful employment action or filing of a charge of age discrimination.  <u>Id.</u> § 623(d).  The court addresses plaintiffs' discrimination claims and Kreiglmeier's retaliation claim in turn.

### A.  Burden of Production

The parties first dispute whether plaintiffs' claims are properly analyzed under the burden-shifting analysis set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), or the mixed-motive analysis set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).  A plaintiff alleging an age discrimination or retaliation claim under the ADEA can prove intentional discrimination under either method.  <u>See</u> <u>Stewart v. Indep. Sch. Dist. No. 196</u>, 481 F.3d 1034, 1042-43 (8th Cir. 2007) (retaliation claim); <u>Morgan v. A.G. Edwards & Sons, Inc.</u>, 486 F.3d 1034, 1042 (8th Cir. 2006) (discrimination claim).  However, to be entitled to a <u>Price Waterhouse</u> mixed-motive analysis a plaintiff has the burden to establish direct evidence of age discrimination, which "'refers to the *causal strength of the proof.*'"  <u>Morgan</u>, 486 F.3d at 1042

11

(quoting Richardson v. Sugg, 448 F.3d 1046, 1058 (8th Cir. 2006)). If a plaintiff's claim depends upon circumstantial, or indirect, evidence of age discrimination, the burden-shifting framework of McDonnell Douglas applies.  Id.

To warrant Price Waterhouse review, direct evidence "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact-finder that an illegitimate criterion actually motivated the employment decision."  Id. (internal quotations omitted) (alteration in original).  Direct evidence can include "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor."  Id.  (internal quotations omitted).  "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference." Cronquist v. City of Minneapolis, 237 F.3d 920, 925 (8th Cir. 2001).  For example, "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process" are not direct evidence of age discrimination. Morgan, 486 F.3d at 1042 (internal quotations omitted).

Plaintiffs contend that Gleason's question to Crancer —
inquiring about when Crancer planned on retiring — implied that the
promotion would not be offered to an employee as old as Crancer and
is direct evidence of age discrimination.  In addition, plaintiffs
point to Gleason's comment to Eckert regarding overtime
opportunities that "ditch digging was for young people" and
Gleason's comment to Krieglmeier regarding temporary supervisor
opportunities that he liked "to throw the younger employees a bone
once in awhile" as proof of discrimination.  (See Eckert Dep. at
36; Krieglmeier Dep. at 70.)  Based on these three statements by
Gleason, plaintiffs contend they have established direct evidence
that plaintiffs' ages were motivating factors in the relevant
employment decisions and warrant Price Waterhouse review.

The court disagrees.  First, the only alleged discriminatory
statement by Gleason with a direct nexus to the decision of who to
promote is Gleason's question to Crancer.  However, at this time,
plaintiffs provide only hearsay to support that Gleason asked such
a question.  (See Geilfuss Aff. ¶¶ 5-6.)  A party may not rely on
hearsay evidence to oppose a summary judgment motion.  Walker v.
Wayne County, 850 F.2d 433, 434-35 (8th Cir. 1988).  The court will
not stretch the presumption in plaintiffs' favor "so far as to
consider as evidence statements found only in inadmissible
hearsay."  Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001).

Second, the statement by Gleason regarding "ditch digging" is a stray comment in the workplace that is not directly connected to either employment decision involved in this litigation. Rather, it was made solely in the context of Eckert's overtime inquiry. Similarly, the statement by Gleason to Krieglmeier about "throwing a bone" to younger workers is directly connected only to Krieglmeier's inquiry about supervisor assignments. The statement is not direct evidence that the interview panel based its decision on who to recommend to Schneider on the plaintiffs' ages. The court finds that this statement alone does not "support an inference that discriminatory attitude more likely than not was a motivating factor." Morgan, 486 F.3d at 1042. The court concludes that plaintiffs have failed to present direct evidence of age discrimination. Therefore, Price Waterhouse review is not warranted, and the court will review plaintiffs' claims under the analysis set forth in McDonnell Douglas.

**B.   Discrimination Claims**

Under the McDonnell Douglas burden-shifting analysis, a plaintiff must first establish a prima facie case of age discrimination. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003). If a plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its conduct. Id. at 856. If the defendant offers such a reason, the plaintiff must then demonstrate

14

that the proffered reason is pretext for unlawful discrimination. Id. at 855.

### 1. Plaintiffs' prima facie cases

Each plaintiff contends that SPRWS's decision not to promote him to the respective supervisor positions was based on age. In reviewing employment decisions, courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgment made by employers, except to the extent that those judgments involve intentional discrimination." Regel v. K-Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999) (internal quotations omitted). Rather, to establish a prima facie case of age discrimination under the ADEA, each plaintiff must show that (1) he was over the age of forty and thereby a member of the statutorily protected class, (2) he was qualified for the position, (3) he was not promoted and (4) the City hired a younger person to fill the position. See Chambers, 351 F.3d at 855-56; Erickson v. Farmland Indus., Inc., 271 F.3d 718, 725-26 (8th Cir. 2001).

In this case, Eckert and Krieglmeier were not qualified to be interviewed for the promotions because they did not score high enough on the qualifying questionnaires. Therefore, Eckert and Krieglmeier's age discrimination claims fail, and summary judgment in favor of defendants on their claims is warranted.

Geilfuss, however, was older than forty, was certified to interview for the position and did not receive the promotion, which

15

was given to thirty-nine-year-old Ludden.  Therefore, the court
concludes that Geilfuss has established a prima facie case.

### 2.  **Defendants' legitimate, nondiscriminatory reasons**

Regardless of plaintiffs' ability to establish a prima facie
case, defendants have met their burden to articulate legitimate,
nondiscriminatory reasons for each promotional decision.
See Chambers, 351 F.3d at 856.  "This burden is one of production,
not persuasion; it 'can involve no credibility assessment.'"
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)
(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).
As to Eckert and Kreiglmeier, Gleason did not consider or interview
them for the positions because the City's human resources
department did not certify them as qualified candidates.  As to
Geilfuss, Gleason and the panel recommended that Schneider appoint
Ludden to the meter operation supervisor position because the panel
considered him the most qualified candidate based on his prior
experience as a supervisor.  (See Gleason Dep. at 155.)  In
addition, pursuant to the Civil Service Rules, Ludden was the only
transfer candidate qualified for the position, and a vacant
position "shall be filled whenever possible" by a reduction-in-
title or transfer candidate rather than a promotional candidate.
(Barto Aff. Ex. EE.)  The panel's opinion that Ludden was the most
qualified candidate based on his prior supervisory experience
coupled with the fact that he was the only transfer candidate

qualified for the position is a legitimate, nondiscriminatory reason to promote Ludden instead of Geilfuss.

### 3. Evidence of pretext

Moreover, if defendants failed to articulate a legitimate reason for the employment decisions, the burden would then shift back to plaintiffs to "offer proof that would allow a rational fact-finder to conclude that the proffered reason was not the true reason for the employment action, and that age was." Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001). Once an employer articulates a lawful reason for a decision, it is not the province of the court to decide whether the decision was "wise, fair or even correct," so long as it was not pretext for illegal discrimination. Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998) (internal quotations omitted). Specifically, a plaintiff must present evidence sufficient to "(1) create a question of fact as to whether [defendants'] proffered reason was pretextual *and* (2) create a reasonable inference that age was a determinative factor" in the employment decision. Erickson, 271 F.3d at 726. In other words, plaintiffs must establish that the defendants' justification "is unworthy of credence." Id.

To establish pretext, plaintiffs contend that the City ignored its own minimum job requirements by hiring Ludden, who did not take a qualifying questionnaire, and by permitting Knutson to apply for the position despite not having two years of meter operation or

water department experience.  Plaintiffs also challenge the format of the civil service exam and manner in which the human resources department subjectively scores the exam.  Plaintiffs argue that the scoring permits preselection of individuals based on unlawful considerations, such as age, and that the form of the examination violates Civil Service Rule 6, which requires competitive examinations that fairly test the relative ability of the applicants.  Plaintiffs further argue that the failure of the human resources department to certify the top three scores from within the meter operation division to interview for meter operation supervisor, which would have resulted in Eckert being certified for an interview, violated Civil Service Rule 8.A.3.   Lastly, plaintiffs rely on the three statements made by Gleason as evidence of age discrimination and contend that they were qualified for the respective supervisor positions.

In sum, plaintiffs' arguments as to Eckert and Kreiglmeier amount to an attack on the system established by the Civil Service Rules and utilized in this case to fill vacant appointments. However, plaintiffs have failed to present evidence to support their allegations that the list of candidates certified by the City's human resources department was predetermined by Gleason based on a consideration of the candidates' ages.  Plaintiffs offer nothing more than conjecture that the individuals within the human resources department who scored the examinations knew the

18

candidates' identities or scored the exams based on the candidates' ages or Gleason's opinion of who should be interviewed.  As to Geilfuss, he presents no evidence in addition to the hearsay based on the conversation between Gleason and Crancer that the panel recommended that Steve Schneider appoint Ludden to the position because he was younger than Geilfuss.  Further, Geilfuss presents no evidence that the ultimate decisionmaker, Schneider, considered the candidates' ages in accepting the panel's recommendation.  For these reasons, plaintiffs have failed to present evidence sufficient to create a reasonable inference that the defendants' articulated reasons are pretext for unlawful employment decisions based on age.

For all the above reasons, summary judgment in favor of the City and the Board on plaintiffs' ADEA age discrimination claims is warranted.

### C.   Krieglmeier's Retaliation Claim[4]

---

[4]   Based on the record before the court, it does not appear that Kreiglmeier exhausted his administrative remedies as to his retaliation claim, which would render that claim subject to dismissal.  (See Kreiglmeier Dep. Ex. 5; Seeba Aff. Ex. G.) Exhaustion of administrative remedies is a prerequisite to filing an age discrimination claim in federal court, and a lawsuit can extend only to "the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." See 29 U.S.C. § 626(c); Shelton v. Boeing Co., 399 F.3d 909, 912-13 (8th Cir. 2005).  For purposes of exhaustion, discrimination and retaliation claims are "separate and distinct." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994).  However, because the parties did not raise the issue of exhaustion the court assumes, for purposes of this motion, that
(continued...)

To establish a prima facie claim of retaliatory discrimination, a plaintiff must establish (1) that he engaged in statutorily protected activity, (2) that he suffered an adverse employment action and (3) a causal connection between the two. Stewart, 481 F.3d at 1043. Assuming, without deciding, that a decrease in the number of opportunities to serve as a temporary supervisor is an adverse employment action, Kreiglmeier has failed to establish a causal connection between any such adverse employment action and his complaints of age discrimination or the filing of his EEOC claim on October 17, 2005.

To establish a causal connection, Kreiglmeier relies only on the fact that Gleason and Eilts knew that Kreiglmeier was concerned about the assignment of supervisor shifts to younger employees and the timing of the decrease in his shifts. However, according to Kreiglmeier, after returning from the night shift in 2005 he received one temporary supervisor shift in November and has worked as a supervisor in 2006 approximately ten times. (Kreiglmeier Dep. at 72-74.) The number of shifts Kreiglmeier was assigned after returning from the night shift is substantially lower than the number of shifts he worked prior to taking the night shift. However, the court finds that the timing of the decrease in shifts alone is insufficient to establish evidence of a causal connection

---

[4](...continued)
Kreiglmeier exhausted his remedies on the claim and proceeds to its merits.

in this case.  Therefore, summary judgment in favor of defendants is warranted on the retaliation claim.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 11] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 10, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court